**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SAMUEL O. ARAOYE a/k/a ELLSWORTH D.,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| | **NO. 23-1331** |
| **THOMAS J. VILSACK, JOSEPH HARRISON, STEPHANIE NIEMI, and DENNIS JEMMERSON,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Samuel Araoye, a Black man from Nigeria who was "hired as a disabled veteran," worked for the United States Department of Agriculture ("USDA") for almost a year and a half between 2019 and 2021. Proceeding *pro se*, he alleges: (1) racial and disability-based discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794; (2) a hostile work environment based on sexual harassment, in violation of both Title VII; (3) failure to accommodate his disability, in violation of the Rehabilitation Act; (4) retaliation, in violation of Title VII and the Rehabilitation Act; and, (5) violations of unspecified provisions of the United States Constitution. For the reasons stated below, Defendants' Motion to Dismiss and Substitute Certain Defendants and Motion for Summary Judgment will be granted. Araoye's Motion for Summary Judgment will be denied.

**I.     BACKGROUND**

This factual recitation is taken in large part from Defendants' Statement of Undisputed Material Facts because Araoye did not submit any factual statement disputing their characterization of what happened in this case. The scheduling order for this case (ECF No. 52) required the party moving for summary judgment to file a separate Statement of Undisputed

Material Facts, and it required the party opposing summary judgment to file both: (1) a response

to the summary judgment motion itself; and, (2) a response identifying any objections to that

Statement of Undisputed Material Facts.  Araoye provided neither a Statement of Undisputed

Material Facts to support his motion for summary judgment nor a response to Defendants'

Statement of Undisputed Material Facts.  "Pro se litigants are afforded additional flexibility with

regard to procedural rules, but they are ultimately held to the same substantive standard as

counseled litigants." *Lance v. SEPTA*, 2023 WL 5916464, at *2 n.3 (E.D. Pa. Sept. 11, 2023)

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)); *see also Watson

v. Phila. Hous. Auth.*, 629 F. Supp.2d 481, 485 (E.D. Pa. 2009) (citation omitted) ("[D]espite . . .

liberal interpretation [of their pleadings], the same standards for summary judgment apply to *pro

se* litigants.").  Further, in the context of a summary judgment motion, "[t]he non-moving party

may not merely deny the allegations in the moving party's pleadings; instead, he must show

where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends

Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).  Defendants' factual statements thus

"are treated as uncontested" except where Araoye's own evidence is sufficiently responsive to

place them in genuine dispute. *Lance*, 2023 WL 5916464, at *2 n.3 (citing *Ankele v. Hambrick*,

286 F. Supp.2d 485, 496 (E.D. Pa. 2003)).

       Araoye worked within the Special Crops Market News Division of the USDA's

Agricultural Marketing Service as a Market News Reporter in the Department's Philadelphia

office.  His pay grade when he joined the USDA was GS-9.  According to a job posting for the

position, as a Market News Reporter, Araoye's responsibilities included: (1) "[c]ontacting the

many firms by face to face or telephone interview in collecting and analyzing information

relative to general and specific market conditions;" (2) "[r]econciling . . . price quotation[s] . . .

by commodity unit of sale, size, variety, grade and other distinguishing factors;"

(3) "[s]tud[ying] daily and seasonal operations;" and, (4) "prepar[ing] and disseminat[ing] a

number of daily, weekly, monthly, and special market reports."  This job required an "ability to

establish and maintain sound working relationships" and knowledge of, for example: (1) "the

characteristic physical features of many different specialty crops;" (2) "all quality grading

criteria and factors of economic significance in the specialty crops market;" and, (3) "members

of the trade for specialty crops and the characteristics of each market with economics, business

and marketing crops and the manner in which they are stored, marketed and distributed."  The

job posting warned that:

> The majority of work is performed in a typical office setting but some work may
> be performed outside with exposure to inclement weather, slippery docks, power
> lift equipment, high noise levels and similar risks.  Occasional visits to farms and
> packing sheds and travel to perform temporary relief in other offices is required.

While he worked at USDA, Araoye's supervisors included Defendants Joseph Harrison, Alesia

Swan, and Terry Long.  Defendant Dennis Jemmerson was among his colleagues in the

Agricultural Marketing Service.

Araoye received extensive training in his job.  He received an initial round of training in

Philadelphia, but, according to the record from the USDA's investigation that preceded this case,

Swan felt that "the way he was being trained was not working," either because he "was not

catching on" or because Harrison's training was not effective.  Araoye thus was sent to

Baltimore, Maryland for additional training in March 2020 but quickly returned after the

COVID-19 pandemic struck.  Once back in Philadelphia, however, Harrison and Jemmerson

expressed their concern that, despite "limited improvement," Araoye "still demonstrate[d] a

consistent inability to work independently to a degree in certain areas," so Swan decided to

request further "one on one training" for him.  Araoye thus received six additional weeks of

training at the Hunts Point Terminal Market in New York starting that June.  Araoye received

this additional training—per Swan, "more opportunities than the average employee"—in part

because he was not performing well, and his supervisors wanted to "give him every opportunity

to receive training and be successful."

     Despite this training, Araoye received consistently poor feedback from his supervisors.

While in New York, Araoye repeatedly got "lost in his surroundings" and "gathere[ed]

information that was not his to gather."  Harrison noted that he needed to work on

"[r]emembering sources of data and pricing" and "[r]ecognizing mistakes and making necessary

corrections."  For example, one day he failed to get complete pricing data from eight vendors in

the Philadelphia Wholesale Produce Market.  He also "failed to get origin and grades" for and

mis-graded other produce in the market, reporting prices for cantaloupe as prices for cauliflower.

     On February 23, 2021, Araoye was terminated for "[u]nacceptable [p]erformance."

     Prior to his termination, while he was in New York, Araoye suffered some health issues.

He complained of pain consistent with plantar fasciitis—a condition where tissue in the foot

becomes inflamed, causing severe pain in the heel.  He requested a reasonable accommodation

from Harrison, asking that his job be "limited to office work (e.g., database entries, retails, and

auction reporting)" and to "[b]e considered for [a] position as a Market News Reporte[r] at

Headquarters."  He indicated that these accommodations were necessary because he "could not

walk throughout the terminal market for market data."  Following two interactive discussions

between Araoye, Harrison, Swan, and a reasonable accommodation coordinator, the USDA

provided an interim accommodation of "tak[ing] leave, as needed" until Araoye's physician

could return the necessary information.  When the physician's report came in, it indicated that

Araoye could not: (1) walk through the market to talk with business representatives; (2) complete

"[p]rolonged periods of standing, walking, and climbing in and through markets;" or, (3) perform "[o]n-site visual and physical handling of commodities to determine [their] physical characteristics."  The physician thus recommended a "sedentary job" for Araoye.  The accommodation he was provided did not include transfer to a sedentary job, but it did allow him "[f]lexible use of leave for medication condition/appointments/treatments" and "[c]ontinue[d] use of time off/accrued leave, as needed, when not feeling well and/or unable to perform the essential functions of the position."

Araoye appealed that accommodation to Long in an email without identifying any specific errors in the decision.  The appeal was unsuccessful in that Araoye's "position as a wholesale or terminal market reporter requires a physical presence on the market . . . [s]o, based on the documentation that [he] has provided regarding his physical limitations, he is unable to perform the duties for which he was hired."  Moreover, as Long explained in an affidavit, the position at USDA Headquarters that Araoye had requested was a GS-12 position for which he was not qualified, although according to the USDA's own records, the position could be "[a]dvertise[d] . . . as an entry level Market Reporter; GS-7/9/11."

Consistent with the accommodation that he had been granted, Araoye requested leave without pay.  The USDA granted that request, and human resources officials at the USDA engaged in extensive discussions with Araoye about his rights to leave, the appropriate forms to file to avail himself of those rights, and the amount of leave he could take in a year.

A few years later, after he had been terminated, Defendant Stephanie Niemi, a human resources specialist, completed a Department of Veterans' Affairs ("VA") disability benefits form that is filled out by an applicant's most recent employer (Form 21-4192), but in doing so—

according to Araoye—she "knowingly falsified" the information she included.[1]  One of the lines

on that form asked if the applicant was "receiving or entitled to receive, as a result of his/her

employment with [the employer], sick retirement or other benefits?"  If the answer to that

question is "yes," the preparer of the form is to fill out its next three lines.  Although Araoye was

not receiving any such benefits, Niemi pointed out on the next line of his Form 21-4192 that

"[h]e is eligible to apply for Disability Retirement with OPM"—the Office of Personnel

Management.  In an email exchange with Niemi, Araoye expressed his displeasure with how she

had filled it out, but Niemi declined to change its contents because they were correct.  She noted

his eligibility for OPM disability benefits because, although he "applied for disability retirement

and was denied, . . . that does not change the fact that [he is] still eligible to apply again."  Niemi

offered to have Araoye "pass along [her] contact information" to the VA if the agency had any

questions about his benefits application.

        A few weeks before he was terminated Araoye filed a complaint alleging race-, gender-,

national-origin-, and disability-based discrimination and retaliation with the USDA's Civil

Rights Enforcement Center.  This was a formal follow-up to a series of emails sent in October

2020 to USDA management alleging racial and disability-based discrimination and retaliation by

Harrison, Long, and Niemi for requesting leave.  The USDA's Final Agency Decision concluded

that "discrimination did not occur with respect to the issues in [Araoye's] complaint."  The next

month, Araoye appealed to the Equal Employment Opportunity Commission ("EEOC"), again

arguing that if he were white, American, a woman, and/or not disabled, he would have been

treated differently.  The EEOC upheld the USDA's decision on February 27, 2023.  Araoye then

---

[1] He also argues that Niemi "[i]ntentionally . . . delayed" filing this form but does not explain how she did so or how
doing so violated his constitutional rights.

brought this suit.

**II.     DISCUSSION**

>   **A.  Harrison's, Jemmerson's, and Niemi's Misjoinder Motion**

As a preliminary matter, Defendants Harrison, Niemi, and Jemmerson argue that they should be dismissed from the case because Vilsack alone is the proper defendant for Araoye's suit.  Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

They are correct.  Title VII's plain text provides that, in "civil action[s]" against the federal government, "the head of the department, agency, or unit, as appropriate, shall be the defendant."  42 U.S.C. § 2000e-16(c).  This provision directs litigants to proceed against a single individual—"the defendant."  *Id.*  The Rehabilitation Act has been interpreted to contain similar limitations.  *Adams v. EEOC*, 932 F. Supp. 660, 664 n.3 (E.D. Pa. 1996) (citations omitted). Here, the "head of the department" and proper defendant is Secretary Vilsack.  The claims against Harrison, Niemi, and Jemmerson will, accordingly, be dismissed.  Fed. R. Civ. P. 21.

>   **B.  Motion to Dismiss Araoye's *Bivens* Action**

Next up is Defendants' argument that, to the extent that Araoye is requesting damages for alleged violations of the United States Constitution under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), such an action is improper in the employment discrimination context.  Fed. R. Civ. P. 12(b)(6).  A *Bivens* claim is "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  But "expanding the *Bivens* remedy is a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Among the circumstances in which it is improper to allow a *Bivens* claim to proceed is "if there is an alternative remedial structure present in a certain case."

*Id.* at 137.  And the Supreme Court has made clear that Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1972); *see Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007) (citation omitted).  *Bivens* actions to press employment discrimination claims against the federal government thus are improper where, as here, Title VII provides such a remedy.  *Doe v. DeJoy*, 2020 WL 4382010, at *10-11 (E.D. Pa. 2020); *Beach v. Smith*, 150 F. Supp.3d 41, 47 & n.6 (D. Me. 2015); *Kittner v. Gates*, 708 F. Supp.2d 47, 53 (D.D.C. 2010).  Accordingly, to the extent that Araoye's claims are premised on alleged violations of his constitutional rights, they will be dismissed.  His allegations of employment discrimination will be analyzed under Title VII,[2] the Rehabilitation Act, and other relevant federal statutes.

### C.  Secretary Vilsack's Motion for Summary Judgment

Secretary Vilsack moves for summary judgment on all remaining claims against him pursuant to Federal Rule of Civil Procedure 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Material facts are those that could affect the outcome of the proceeding."  *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks and citation omitted).  "A genuine issue is present when a reasonable trier of fact, viewing all of

---

[2] In a supplemental filing, Araoye argues that Title VII does not apply to him because he no longer works at the USDA.  That is not the case.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997) ("Title VII's definition of 'employee' . . . lacks any temporal qualifier and is consistent with either current or past employment.

the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe*, 480 F.3d at 256 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).  A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 323.

"Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion."  *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (cautioning that "courts are required to view the facts and draw *reasonable* inferences" in favor of the nonmoving party (emphasis added)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 550 U.S. at 380.

Given that Araoye is proceeding *pro se*, his filings are construed liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nonetheless, "on a motion for summary judgment, a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment."  *Lloyd v. Presby's Inspired Life*, 251 F. Supp.3d 891, 898 (E.D. Pa. 2017) (internal quotation marks and citation omitted); *see also Edwards v. Rice-Smith*, 606 F. Supp.3d 151, 154 (E.D. Pa. 2022).  "The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial."  *Watson*, 629 F. Supp.2d at 485.

As a preliminary matter, many of Araoye's claims implicate the familiar burden-shifting framework for cases involving indirect evidence of discrimination from *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  Under that framework, once the plaintiff has established the *prima facie* case for the action, "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citation omitted).  "If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.* (citation omitted).  For the reasons set forth below, Secretary Vilsack's Motion for Summary Judgment will be granted.

### i.   *Disparate Treatment*

Secretary Vilsack moves for summary judgment on Araoye's claims of racial and disability-based discrimination, which is predicated on the allegedly poor training he received, his being sent to New York at the peak of the COVID-19 pandemic, and his alleged denial or certain types of medical leave.

#### a.   Race

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id.* at 214.  The Secretary concedes that the first three elements of the *prima facie* case are met here but argues that Araoye has failed to submit any evidence showing that he was treated differently from any similarly situated employee, so his firing did not occur in circumstances that could give rise to an inference of intentional discrimination.  In the alternative, he argues that Araoye's

firing was for legitimate, non-discriminatory reasons.  The Secretary is entitled to summary judgment based on either argument.

A plaintiff can meet their burden in showing that their firing took place under circumstances that give rise to an inference of intentional discrimination "'in a number of ways, including, but not limited to, comparator evidence,' or evidence of similar . . . discrimination towards other employees."  *Selvato v. SEPTA*, 143 F. Supp.3d 257, 268 (E.D. Pa. 2015) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (not precedential)).  For their treatment to be evidence of intentional discrimination, any comparator colleagues to whom a plaintiff points must be "similarly situated."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 646 (3d Cir. 2015).  "Although 'similarly situated' does not mean identically situated, the comparator must be similar in all relevant aspects," such as "whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct."  *Durst v. City of Philadelphia*, 798 F. App'x 710, 713 (3d Cir. 2020) (not precedential) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003)).  "Whether two individuals are similarly situated is generally a fact question for a jury to decide."  *Onely v. Redner's Mkts., Inc.*, 2023 WL 6626120, at *6 (E.D. Pa. Oct. 11, 2023) (citation omitted).

Although in his supplemental affidavit from his agency complaint, Araoye submitted that there was "no evidence" that a woman, a white person, "another employee of foreign origin," or "another employee with [a] disability" was sent to New York for training at the peak of the COVID-19 pandemic or was denied medical leave, he does not point to any specific comparator colleagues in his filings before the Court.  Therefore, there is no debate between the parties over the similarity between two employees that can be placed into genuine dispute.  Nor does the record reveal any evidence of relevantly similar discrimination towards other USDA employees.

In short, Araoye has failed to produce evidence from which a rational factfinder could conclude that he was fired under circumstances that give rise to an inference of intentional discrimination. He has failed to make out the *prima facie* case.

Indeed, even if Araoye had pointed to a valid comparator colleague, his claim still would fail because the poor performance reviews he received are a legitimate, non-discriminatory reason for his firing.  *See, e.g.*, *Pearson v. Vanguard Grp.*, 702 F. App'x 63, 67-68 (3d Cir. 2017) (not precedential); *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989).  As discussed above, Araoye repeatedly fell short of the mark in providing the correct market prices, maintaining relationships with the businesses that he covered, and identifying the agricultural products to which he was assigned.  These resulted in a finding that his performance was "[u]nacceptable."  Araoye has not submitted any evidence that those reviews, which build on over a year of concerns by his colleagues about his performance, were "merely pretext for intentional discrimination," *Makky*, 541 F.3d at 214 (citation omitted), or otherwise were the result of his supervisors' discriminatory animus, *McKenna v. City of Philadelphia*, 649 F.3d 171, 179 (3d Cir. 2011).  Relatedly, the undisputed evidence shows that Araoye was given additional training in Baltimore and New York because of his poor performance, not due to intentional discrimination.  Thus, Secretary Vilsack is entitled to summary judgment on his claim of racial discrimination under Title VII.

### b.  Disability

Secretary Vilsack similarly is entitled to summary judgment on Araoye's claim of disability-based discrimination under the Rehabilitation Act because he has submitted uncontroverted evidence that Araoye was fired for a legitimate, non-discriminatory reason.  "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show, '(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the

essential functions of the job, with or without reasonable accommodations by the employer; and

(3) that he or she was nonetheless terminated or otherwise prevented from performing the job.'"

*Wishkin v. Potter*, 476 F.3d 180, 184-85 (3d Cir. 2007) (quoting *Shiring v. Runyon*, 90 F.3d 827,

831 (3d Cir. 1996)).

       The Secretary concedes that Araoye has made out his *prima facie* case but argues that his

poor performance provided a "legitimate, nondiscriminatory reason for" his firing. *Id.* at 185

(citation omitted). As discussed *supra* in the context of Araoye's racial discrimination claim, the

Secretary has provided such reasons and those reasons are uncontroverted by anything in the

record. Thus, summary judgment is warranted on his claim of disability-based discrimination

under the Rehabilitation Act is appropriate as well.

### ii. Hostile Work Environment

       Title VII makes it unlawful for employers to knowingly subject employees to harassment

"sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create

an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

To establish a hostile work environment claim, Araoye must establish four elements:

(1) "intentional discrimination because of his[] sex;" (2) that "was severe or pervasive; (3) that

"detrimentally affected" him; and, (4) "would detrimentally affect a reasonable person in like

circumstances." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation

omitted). "To determine employer liability, the plaintiff also must show that *respondeat

superior* liability exists." *De Piero v. Pa. State Univ.*, 2024 WL 128209, at *6 (E.D. Pa. Jan. 11,

2024).

       In the context of a hostile work environment case, there is a distinction to be made

between "severe" and "pervasive" harassment. "[S]ome harassment may be severe enough to

contaminate an environment even if not pervasive; other, less objectionable, conduct will

contaminate the workplace only if it is pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264

(3d Cir. 2017).  That said, when alleging pervasive discrimination, to survive a motion for

summary judgment, the plaintiff must be able to describe "specific comments" instead of

"rely[ing] merely on 'vague statements' to defeat summary judgment. *Nitkin v. Main Line*

*Health*, 67 F.4th 565, 570-71 (3d Cir. 2023) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM*

*Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

Araoye's hostile work environment claim is predicated on allegations that: (1) Harrison

and Jemmerson "intentionally sagg[ed] their pants, revealing . . . [the] cleavages of their

buttocks;" (2) Harrison told him that his unit manager was, according to Araoye's statement in

the USDA's Report of Investigation, "not straight;" and, (3) Jemmerson "incessantly"—per the

Report of Investigation, "several" times—told him that "he should not let them take his manhood

away."  This evidence is insufficient to defeat Secretary Vilsack's Motion for Summary

Judgment for two reasons.  Araoye relies on "vague statements" of harassment that the Third

Circuit has cautioned are not a basis for denying summary judgment.  *Id.* at 571 (quotation

omitted).  Araoye's "general, unsubstantiated allegations that the conduct occurred

'regularly'"—in his words, "incessantly"—are insufficiently specific.  *Id.*  Even taking those

allegations as true, they do not rise to the level of severe or pervasive sexual harassment as

illustrated by Third Circuit precedent.  *See, e.g.*, *Starnes v. Butler Cnty. Ct. of Com. Pl., 50th*

*Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (allegations that a supervisor "coerced [plaintiff]

into engaging in sexual relations, shared pornography with her, asked her to film herself

performing sexual acts, engaged in a pattern of flirtatious behavior, scolded her for speaking with

male colleagues, assigned her duties forcing her to be close to him, and treated her differently

than her male colleagues" stated a claim for hostile work environment); *Moody*, 870 F.3d at 215

(evidence that supervisor "made sexually charged comments to [plaintiff] and grabbed her," "called her into his office" where he was "sitting naked on a chair," and "called [her] into his office and attempted to take her shirt off" was sufficient to defeat motion for summary judgment on a hostile work environment claim); *cf. Nitkin*, 67 F.4th at 568, 572 (holding that a supervisor repeatedly referencing his sex life to the plaintiff and mentioning he had been watching pornography all night did not constitute severe or pervasive sexual harassment); *Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 502 (W.D. Pa. 1988) (noting that "[s]nubs" and even "unjust criticisms of one's work are not poisonous enough to create an actionable hostile work environment").

Secretary Vilsack thus is entitled to summary judgment on Araoye's hostile work environment claim.

### iii. Failure to Accommodate

Next is Araoye's challenge to the USDA's proposed accommodation of his plantar fasciitis. "[A] claim stemming from an employer's failure to accommodate an employee's disabilities may be viewed simply as a type of discrimination claim, where" the failure to accommodate provides "the relevant adverse employment action." *Fowler v. AT&T, Inc.*, 19 F.4th 292, 306 (3d Cir. 2021). To show that he suffered that adverse employment action, Araoye "must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (citations omitted).[3]

---

[3] Although *Capps* involves the Americans with Disabilities Act ("ADA"), the *prima facie* case for a failure to

The Secretary argues that the USDA engaged with Araoye in good faith, so he has failed to establish his *prima facie* case. "Employers can show their good faith" by, for example: (1) holding a meeting with the employee; (2) "request[ing] information about the condition and what limitations the employee has;" (3) "ask[ing] the employee what he or she specifically wants" in a reasonable accommodation; (4) "show[ing] some sign of having considered employee's request;" and, (5) if the requested accommodation "is too burdensome," providing the employee with "available alternatives." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999).

It is undisputed that the agency did all of these things as part of the interactive process. According to the USDA's Reasonable Accommodation Information Reporting Form, just over two weeks after Araoye requested a reasonable accommodation, an interactive discussion was held. At that meeting, Araoye requested telework as an accommodation. The next day, Harrison emailed Araoye "a job function request that included excerpts from [his] position description and performance plan . . . to forward to his physician to identify the essential functions, duties, and responsibilities [he] could perform." The USDA provided an interim accommodation pending receipt of that information. A second interactive discussion was held after Araoye's physician responded, at which agency personnel discussed his job's requirements and "the accommodations that could be provided." Finally, within four weeks of receiving an assessment from Araoye's physician, and after "management also tried to find a position within [the] Specialty Crops Inspection Division and Marketing Order Administration Division" and found "no vacant positions . . . available at a beginner level/GS-9," the agency approved the alternative

---

accommodate claim is the same under the Rehabilitation Act. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (citation omitted). The same is true for regulations and interpretive guidelines expounding employers' responsibilities under the ADA. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 & n.5 (3d Cir. 1999).

accommodation of "[f]lexible use of leave for medical condition/appointments/treatments" and "[c]ontinue[d] use of time off/accrued leave, as needed, when not feeling well and/or unable to perform the essential functions of the position."  Given these undisputed facts, no rational factfinder could conclude that USDA's actions constitute bad faith.[4]  *See, e.g.*, *Garner v. Sch. Dist. of Phila.*, 63 F. Supp.3d 483, 494 (E.D. Pa. 2014).

### iv. Retaliation

In his Amended Complaint, Araoye alleged that he was retaliated against for "complaining about racial discrimination" and a "lack of workplace accommodation" when he was fired and was "knowingly blocked and delayed" in accessing certain VA benefits.[5]  The Court understands Araoye to be referencing his emails to USDA management, his subsequent formal complaint to the Civil Rights Enforcement Center, and his appeal to the EEOC.  Because the facts are not in genuine dispute and no rational factfinder could conclude that there was any causal nexus between this activity and any cognizable adverse employment action that Araoye suffered, Secretary Vilsack is entitled to summary judgment on this claim.

Establishing the *prima facie* case of retaliation under Title VII requires the plaintiff to "show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity

---

[4] That this accommodation fell short of what Araoye had requested does not change the calculus either.  "The interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions."  *Taylor*, 184 F.3d at 317 (citation omitted).  As was clear from the job description for Araoye's position and corroborated by Long, being "a wholesale or terminal market reporter requires a physical presence on the market."  Telework therefore was not a reasonable accommodation.  Nor was Araoye qualified for a GS-12 position at USDA Headquarters.

[5] Araoye describes these benefits as "unemployment insurance" and "[u]nemployment [c]ompensation benefits" in his briefing, but based on the record and context, the Court understands him to be discussing the VA disability benefits for which Niemi needed to submit the Form 21-4192.

and the adverse action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citation omitted).  The *prima facie* case of retaliation under the Rehabilitation Act is materially identical and relies on the same modes of proof.  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).[6]  Analogous to other causes of action that implicate *McDonnell Douglas*, the employer can rebut the *prima facie* case of retaliation by proffering "'a legitimate, non-retaliatory reason' for its conduct."  *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (quoting *Krouse*, 126 F.3d at 500).  While the plaintiff eventually must "prove that retaliatory animus was the 'but-for' cause of the adverse employment action," in proving the *prima facie* case, she merely "must produce evidence 'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action.'"  *Carvalho-Grevious*, 851 F.3d at 258-59 (quotation omitted).  The "temporal proximity" between the protected activity and adverse employment action can be "unusually suggestive" evidence of causation.  *Moody*, 870 F.3d at 221 (quotation omitted); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000).  Alternately, a plaintiff can prove causation by showing "a pattern of antagonism coupled with timing" suggestive of retaliation.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, the record is bereft of evidence connecting either Araoye's firing or his denial of his proposed reasonable accommodation to any of his formal or informal complaints of discrimination.  First, Araoye was fired almost four months after he first emailed the USDA's civil rights office.  The Third Circuit has held that "[a]n inference of 'unduly suggestive'

---

[6] Although *Krouse* is an ADA case, as is the case with failure-to-accommodate claims, the statutes are read together when assessing retaliation claims as well.  *Boandl v. Geithner*, 752 F. Supp.2d 540, 561 (E.D. Pa. 201) (citations omitted).

temporal proximity begins to dissipate where there is a gap of three months or more between the protected activity and the adverse action." *Moody*, 870 F.3d at 221 (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)).  Given that Araoye has not produced evidence of a "pattern of antagonism" in response to his email, *DeFlaminis*, 480 F.3d at 267, a rational jury thus could not conclude that there was a causal connection between his complaints and his firing.  Second, Araoye has failed to produce any evidence that Niemi "knowingly" delayed or erred at all in advising him about his leave forms or filling out his VA Form 21-4192, let alone that she did so in retaliation for his email.  A rational jury could not conclude based on the record before the Court that there was a causal connection between these acts and any protected conduct in which Araoye engaged.  Moreover, even if Araoye had established the *prima facie* case of retaliation, as discussed *supra* in the context of his disparate treatment claims, his poor performance provided the USDA with a legitimate, non-retaliatory reason for terminating him.  Secretary Vilsack therefore is entitled to summary judgment on Araoye's retaliation claim as well.[7]

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.  Araoye's Motion for Summary Judgment will be denied.

---

[7] Araoye also moves for summary judgment, but his motion will be denied.  He argues in a conclusory manner that Defendants have failed to "respond [to] or disprove" his "allegations per Title VII and *Bivens*."  But Defendants' detailed factual statement in support of their Motion for Summary Judgment, to which Araoye does not meaningfully respond, belies this assertion.  He next renews his argument that Defendants' responses were untimely under Rule 12, but, as discussed *supra*, that is not so.

Araoye further maintains that Defendants did not respond to his Amended Complaint in a timely manner.  The Federal Rules of Civil Procedure dictate that, when an officer of the United States is sued in his or her individual capacity, the defendant "must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later."  Fed. R. Civ. P. 12(a)(3).  But Defendants filed an answer on June 29, 2023, less than sixty days after the United States Attorney was served on May 4, 2023, and thus complied with Rule 12.

BY THE COURT:

/S/Wendy Beetlestone, J.

_____

WENDY BEETLESTONE, J.